# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:19-cr-92 |
| v. ) | |
| ) | Judge Travis R. McDonough |
| JERMAINE CORTEZ BROOKS ) | |
| also known as "YOUNG HUNNED" ) | Magistrate Judge Susan K. Lee |
| ) | |

## MEMORANDUM OPINION

Defendant Jermaine Cortez Brooks pleaded guilty to possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). (*See* Doc. 13, at 1; Doc. 29, at 1.) On July 10, 2020, Brooks appeared for his sentencing hearing. The Court heard argument regarding whether certain of Brooks's prior convictions qualify as "violent felon[ies]" that subject him to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). At the conclusion of the hearing, the Court ordered the parties to submit additional briefing on this issue. The Court has reviewed the parties' supplemental briefs and, for the reasons set forth below, concludes that Brooks is not subject to the ACCA.

### I. THE ARMED CAREER CRIMINAL ACT

18 U.S.C. § 922(g) provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

*Id.* § 922(g). Normally, a defendant who violates § 922(g) may be imprisoned for no more than ten years. *Id.* § 924(a)(2). However, a defendant who violates § 922(g) and has three prior

convictions for "violent felonies" must be sentenced to a minimum of fifteen years' imprisonment. *Id.* § 924(e)(1).

The ACCA defines "violent felony" as:

Any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii) is burglary, arson, or extortion, involves the use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e)(2)(B)(i)–(ii). Subsection (i) is known as the "elements clause" or "use-of-physical-force clause." *See United States v. Smith*, 881 F.3d 954, 956 (6th Cir. 2018). Subsection (ii) includes the "enumerated-offense clause" ("is burglary, arson, or extortion, involves the use of explosives") and the "residual clause" ("or otherwise involves conduct that presents a serious potential risk of physical injury to another"). *See id.* at 956–57. In *Johnson v. United States*, 135 S. Ct. 2551 (2015) [hereinafter *Johnson II*], the Supreme Court held that the residual clause is unconstitutionally vague. *Id.* at 2563 ("imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process"). Therefore, for a sentence to be constitutionally enhanced under § 924(e)(1), it must be based on prior convictions that qualify as violent felonies under the enumerated-offense clause or the use-of-physical-force clause.

## II.    BACKGROUND

Brooks's Revised Presentence Investigation Report (the "Revised PSR") identified the five following prior convictions as "violent felonies" for the purposes of the ACCA:

(1) a 2012 Georgia aggravated-assault juvenile-delinquency adjudication;

(2) a 2014 Tennessee robbery conviction;

(3) two 2015 Georgia convictions for Riot in a Penal Institution; and

(4) a 2018 Tennessee conviction for burglary of a business.

(Doc. 37, at 7–8.) Brooks objected to the Revised PSR, arguing that (1) the 2012 juvenile-delinquency adjudication for aggravated assault does not qualify as an ACCA predicate, and (2) the two 2015 riot-in-a-penal-institution convictions do not qualify as ACCA predicates.[1] (*See generally* Doc. 42.) The Government disagreed, contending that all three of these satisfy the ACCA's use-of-physical-force clause. (*See* Doc. 46, at 1–10.) The ACCA applies if any one of the aggravated-assault juvenile-delinquency adjudication or the riot-in-a-penal-institution convictions qualifies as Brooks's requisite third ACCA predicate. *See* 18 U.S.C. § 924(e)(1). Conversely, if the aggravated-assault adjudication and both riot-in-a-penal-institution convictions are not violent felonies, Brooks is not an armed career criminal. Because neither Georgia aggravated assault nor Georgia riot in a penal institution is an enumerated offense for the purposes of the ACCA, each of those offenses is a violent felony only if it satisfies the use-of-physical-force clause.

## III. THE CATEGORICAL APPROACH

To determine whether a prior conviction qualifies as a violent felony under the ACCA, a court begins with the "categorical approach." *See Descamps v. United States*, 570 U.S. 254, 257 (2013). Under the categorical approach, "[s]entencing courts may 'look only to the statutory

---

[1] Brooks does not challenge the classification of his 2014 Tennessee robbery conviction or his 2018 Tennessee burglary-of-a-business conviction as ACCA predicates. These offenses categorically qualify as violent felonies for the purposes of the ACCA. *See United States v. Priddy*, 808 F.3d 676, 684–85 (6th Cir. 2015) (holding that Tennessee burglary of a business is a violent felony under the enumerated-offenses clause); *United States v. Mitchell*, 743 F.3d 1054, 1059 (6th Cir. 2014) (holding that Tennessee robbery categorically qualifies as a violent felony under the use-of-physical-force clause).

definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions'" to determine whether a particular offense qualifies as an ACCA predicate. *Id.* at 261 (emphasis in original) (quoting *Taylor v. United States*, 495 U.S. 575, 600–02 (1990)). The offense of conviction qualifies as a violent felony under the use-of-physical-force clause when the statutory definition "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *see Johnson v. United States*, 559 U.S. 133, 135 (2010) [hereinafter *Johnson I*].

> The question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*.

*United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (emphasis in original); *see also Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized[.]" (alterations in original) (quoting *Johnson I*, 559 U.S. at 137)).

Because the elements of the crime of conviction are central to the analysis, the first step in the categorical approach is to determine the statute of conviction and the elements of the offense criminalized. *See Descamps*, 570 U.S. at 260–61. When a statute "sets out a single (or 'indivisible') set of elements to define a single crime," this determination is straightforward. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). But when a statute is "divisible"—meaning the statute "list[s] elements of the offense in the alternative, and thereby define[s] multiple crimes"—the inquiry is more complex. *Id.* at 2249. Presented with a divisible statute, a court must determine which set of elements underlies the defendant's conviction; only then can a

4

court analyze whether the use of physical force is an element of the offense. *Id.* The focus of the divisibility inquiry is on elements—the "constituent parts" of a crime that "the jury must find beyond a reasonable doubt to convict the defendant" and "the defendant necessarily admits when he pleads guilty." *Id.* at 2248 (citations and internal quotation marks omitted). A statute that lists various factual means of satisfying a single element is not divisible, as a jury need not find nor a defendant admit a particular means by which the element was satisfied so long as there is acknowledgement that it was indeed satisfied. *Id.* at 2249. In determining whether a particular statute contains alternative elements or merely alternative means for satisfying the same element, a court should consider: (1) the text of the statute; (2) any state-court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction"—but only for the limited purpose of distinguishing between means and elements. *Id.* at 2256–57. If a statute is indivisible and can be violated without the use of force, a violation of that statute is not an ACCA predicate under the use-of-physical-force clause. *See Burris*, 912 F.3d at 392.

However, if a statute is divisible and one set of elements involves the use of force but another does not, the Court applies the "modified categorical approach." *Descamps*, 570 U.S. at 257. Under the modified categorical approach, the Court may consult a "limited class of documents" to determine which alternative set of elements served as the basis for the defendant's conviction. *Id.* The Court then determines whether the offense defined by that particular set of elements qualifies as a violent felony. *Id.* The inquiry into whether a guilty plea establishes an ACCA predicate "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was

5

confirmed by the defendant, or to some comparable judicial record of this information."[2]

*Shepard v. United States*, 544 U.S. 13, 26 (2005). This limited inquiry ensures that defendants are not sentenced to harsher penalties without the protection of a jury verdict or guilty plea, in violation of the Sixth Amendment. *Id.* at 25–26.

The purpose of the inquiry under the modified categorical approach is only to reveal whether the conviction was for a qualifying version of the offense. *Descamps*, 570 U.S. at 262–63 (quoting *Shepard*, 544 U.S. at 26). As the Supreme Court emphasized in *Descamps*:

> [T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's [or determining whether the use of physical force is an element]. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different . . . crimes."

*Id.* at 263–64 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). The "job" of the modified categorical approach is simply to identify the crime of conviction. *Id.* at 264.

## IV. ANALYSIS

Applying the categorical approach and modified categorical approach as appropriate, the Court finds that Brooks's riot-in-a-penal-institution convictions and his aggravated-assault juvenile-delinquency adjudication are not ACCA predicates.

### A. 2015 Georgia Riot-in-a-Penal-Institution Convictions

The Court first looks to the statutory definition to determine the elements of the offense. At the time of Brooks's riot-in-a-penal-institution convictions, the governing statute stated:

---

[2] In the Sixth Circuit, the district court may examine state-court judgments since they fall within *Shepard*'s category of "some comparable judicial record." *United States v. Adkins*, 729 F.3d 559, 568 (6th Cir. 2013) (citing *United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006)).

> Any person legally confined to any penal institution of this state or of any political subdivision of this state who commits an unlawful act of violence or any other act in a violent or tumultuous manner commits the offense of riot in a penal institution.

O.C.G.A. § 16-10-56(a) (2015). A plain reading of the text suggests that this statute is not divisible: the same offense is committed by either "an unlawful act of violence" *or* "any other act in a violent or tumultuous manner." The statute sets forth alternative means of committing the same offense rather than alternate elements of separate offenses. The statute's use of the singular term, "the offense," reinforces this interpretation of the statute. Further, subsection 16-10-56(b) specifies that all violations of subsection (a) are subject to the same minimum and maximum terms of imprisonment without distinguishing between offenses committed by an unlawful act of violence and those committed by an act in a violent or tumultuous manner.

Georgia case law confirms this reading of the text. *See Strapp v. State*, 756 S.E.2d 333, 337 (Ga. Ct. App. 2014); *Grant v. State*, 572 S.E.2d 38, 43 (Ga. Ct. App. 2002). In *Grant*, the Georgia Court of Appeals clarified that "the offense of riot in a penal institution may be committed in two ways[.]" *Id.* (also emphasizing the word "or" in its quotation of the statute). More recently, in *Strapp*, the court explained:

> The offense of riot in a penal institution has two elements: that the defendant be "legally confined to any penal institution" in Georgia, and that he or she has committed an "unlawful act of violence or any other act in a violent or tumultuous manner."

756 S.E.2d at 337 (quoting O.C.G.A. § 16-10-56(a)). This description makes clear that committing "an unlawful act of violence" or "any other act in a violent or tumultuous manner" are alternate means of committing the same offense, and the Georgia riot-in-a-penal-institution statute is indivisible.[3]

---

[3] Some Georgia cases indicate that indictments charging riot in a penal institution sometimes specify whether the offense was committed by "an unlawful act of violence" or by an act "in a

Because the statute is indivisible, the Court looks to the least of the acts criminalized by the statute as a whole to determine whether it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has held that, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140 (emphasis in original) (citations omitted).

The Georgia statute does not require the use of violent force, as it can be violated when a Georgia inmate commits an act in merely a "tumultuous manner." O.C.G.A. § 16-10-56(a). The Georgia Supreme Court has held that the term "tumultuous," though not defined in the Georgia code, has the common meaning of "disorderly, turbulent, or uproarious." *Freeman v. State*, 805 S.E.2d 845, 848 (Ga. 2017). With this definition in mind, it is quite easy to conceive of conduct that is "tumultuous" but that does not involve the "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). For example, verbal

---

violent or tumultuous manner," or even by some conflation of the two. *See, e.g.*, *Paul v. State*, 707 S.E.2d 171, 172 (Ga. Ct. App. 2011) ("Paul was charged with committing the offense of riot in a penal institution in that on or about October 7, 2005, while legally confined in the Harris County jail, he 'did unlawfully act in a violent and tumultuous manner[.]'"); *Grant v. State*, 572 S.E.2d 38, 43 (Ga. Ct. App. 2002) ("The indictment charged that Grant committed this offense by 'commit[ting] an unlawful act of violence[.]'"). In *Grant*, the court held that it was proper for the trial court to instruct the jury to limit its consideration of the evidence to whether he committed the offense in the manner described in the indictment. 572 S.E.2d at 43. However, the court in *Grant* made clear that the purpose of this limitation was to ensure that the defendant received due process, not because a conviction based on the other manner was a separate offense altogether. *See id.* Accordingly, this method of charging the offense does not impact the Court's analysis of whether the statute is divisible, because if charged with both manners, a jury could find the defendant guilty of the offense of riot in a penal institution without specifying the particular manner by which the offense was committed. *See Chynoweth v. State*, 768 S.E.2d 536, 539 (Ga. Ct. App. 2015) (holding that, when the indictment charged the defendant with violating § 16-10-56(a) by "commit[ting] an act in a violent *and* tumultuous manner," the defendant could nevertheless be convicted "if the evidence showed that he committed an act in a violent manner *or* in a tumultuous manner" (emphases in original)).

aggression, lude gestures, acts of self-harm, and the use of force against property could all amount to tumultuous conduct but do not involve any use, attempted use, or threatened use of force against another person.

Further, contrary to the Government's assertion that "there is no 'realistic probability' that Georgia would apply its riot-in-a-penal-institution statute to a situation where violence was not used against the person of another," individuals have been charged and convicted under the statute for conduct that involved no physical force against another person.[4] *See Smith*, 842 S.E.2d at 312. In *Smith*, the defendant was convicted of both riot in a penal institution and aggravated assault for conduct while the defendant was incarcerated in a Georgia county jail. *See id.* The court summarized the distinction between his riot-in-a-penal-institution conviction and his aggravated-assault conviction as follows:

> [T]he evidence shows that the incident began with several inmates, including [the defendant], belligerently refusing to give deputies their playing cards, and then angrily cursing at the deputies when the lock-down was ordered. Indeed, the evidence demonstrates that [the defendant] was one of the instigators in

---

[4] Although this argument is easily disposed of in this case, the Court notes the problematic effects of conditioning a significant sentence enhancement on a federal district court's assessment of whether there is "realistic probability" that a state would apply its statute to conduct that does not involve physical force. The Court recognizes that this "realistic probability" principle is rooted in Supreme Court precedent, and, thus, the Court is bound to apply it. *See Moncrieffe*, 569 U.S. at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *see also Gonzales*, 549 U.S. at 193 ("To show that realistic probability, an offender . . . must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."). Nevertheless, it bears stating that reliance on state-court decisions to make this determination is troubling, particularly for less common offenses concerning which there is little state-court precedent. In order for such precedent to be discernable by a federal court, a case involving the offense must have been appealed to the state appellate court, the issue of how the offense was committed must have been relevant to that appeal, and the state court must have addressed it in some detail in the written opinion. Federal courts are largely in the dark as to what happens at the charging stage or trial-court stage of state criminal proceedings. Thus, there is a daunting risk that a federal court will subject a defendant to a fifteen-year mandatory-minimum sentence because it determines that there is no "realistic probability" that a state would apply its statute in a manner outside of the ACCA when, in reality, the state may have already applied it in that very manner.

9

fomenting this aggression. A few moments later, the actual physical violence erupted, with [the defendant] and other inmates punching and kicking several of the deputies. Thus, under these particular circumstances, the physical violence inflicted upon the deputies and attempts to do so constituted the aggravated and simple assaults, respectively, that ensued *after* the offense of riot in a penal institution was completed.

*Id.* (emphasis in original). The defendant in *Smith* was convicted of riot-in-a-penal-institution under § 16-10-56(a) based on completely non-forceful conduct—refusing to give up cards and "angrily cursing" at deputies—and his conviction was upheld on appeal. *See id.*

Because Georgia law provides for violations of § 16-10-56(a)—the crime of conviction—without any physical force whatsoever, Brooks's convictions thereunder cannot serve as ACCA predicates. *See Burris*, 912 F.3d at 392 ("If . . . the statute forming the basis for the defendant's previous state or federal conviction criminalizes conduct that does not involve "the use, attempted use, or threatened use of physical force against the person of another," then a conviction under that statute may not serve as a violent-felony predicate under the elements clause[.]" (emphasis in original)). The inquiry ends once the Court determines that the offense of conviction does not categorically involve the use of physical force; the Court may not consider any "facts" gleaned from state-court materials beyond the offense of conviction. *See Descamps*, 570 U.S. at 278.

### B. 2012 Georgia Aggravated-Assault Juvenile-Delinquency Adjudication

The Court previously directed the parties to consider and brief "whether the Government has met its burden to prove by a preponderance of the evidence that the Juvenile Court for Walker County, Georgia, found that Brooks committed the underlying assault beyond a reasonable doubt." (Doc. 49, at 1.) However, further review has revealed that, even if consideration of the juvenile-delinquency adjudication does not run afoul of *Apprendi* or the

Sixth Amendment, the aggravated-assault adjudication still does not qualify as a violent felony under the ACCA.

The Georgia aggravated-assault statute at the time of Brook's juvenile-delinquency adjudication stated, in relevant part:

>  (a) A person commits the offense of aggravated assault when he or she assaults:
>
>  (1) With intent to murder, to rape, or to rob;
>
>  (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or
>
>  (3) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

O.C.G.A. § 16-5-21(a) (2012). The corresponding statute for simple assault stated, in relevant part:

>  (a) A person commits the offense of simple assault when he or she either:
>
>  (1) Attempts to commit a violent injury to the person of another; or
>
>  (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

O.C.G.A. § 16-5-20(a) (2012).

The aggravated-assault statute is divisible between subdivisions (1), (2), and (3). *See Thomas v. State*, 738 S.E.2d 571, 575 (Ga. 2013) (explaining that each of "aggravated assault with intent to rob," described in subdivision (1), and "aggravated assault with a deadly weapon," described in subdivision (2), requires proof of an element that the other does not); *Gipson v. State*, 772 S.E.2d 402, 413 (Ga. Ct. App. 2015) ("As alleged in the indictment, aggravated assault with intent to murder required proof of a fact—the intent to kill—that aggravated assault with an offensive weapon did not, and aggravated assault with an offensive weapon required proof of a fact—use of . . . an object that was likely to result in a serious bodily injury to the

victim—that aggravated assault with intent to murder did not."); *see also United States v. Morales-Alonso*, 878 F.3d 1311, 1316 (11th Cir. 2018) (holding that "O.C.G.A. § 16-5-21(a) clearly is divisible as to the aggravator component of the statute" and "sets forth three different crimes, each of which includes a unique aggravator that must be specifically alleged and proven beyond a reasonable doubt for a conviction"). However, the Georgia aggravated-assault statute is not further divisible with respect to the type of simple assault underlying the aggravated assault. *See Simpson v. State*, 589 S.W.2d 90, 93 (Ga. 2003) (holding that it was not error for the trial court to instruct the jury that the defendant could be guilty of an aggravated assault if he committed the underlying assault in *either* manner defined in the simple-assault statute with a deadly weapon, because these were not separate methods of committing aggravated assault); *see also Gipson*, 772 S.E.2d at 409 (explaining that "[t]he State was not required to specify the manner in which [the defendant] committed the simple assault on the victim" in the indictment, because it had alleged that he made an assault with intent to kill). Accordingly, the statute can be violated in three ways: (1) any simple assault plus intent to murder, rape, or rob; (2) any simple assault plus use of a deadly weapon or "object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury"; or (3) any simple assault plus the discharge of a firearm at another from within a motor vehicle. *See* O.C.G.A. § 16-5-21(a); *Morales-Alonso*, 878 F.3d at 1316.

Because the aggravated-assault statute is divisible, the Court applies the modified categorical approach to determine which variant of the statute underlies Brooks's juvenile-delinquency adjudication. *See Descamps*, 570 U.S. at 257. Here, it is clear from the delinquent

petition[5] that his adjudication was for violation of § 16-5-21(a)(2). (*See* Doc. 46-1, at 1–2.) The petition alleged that:

> In Walker County, Georgia, on March 25, 2012, Jermaine Brooks committed the delinquent offense of Aggravated Assault, a violation of O.C.G.A. § 16-5-21 in that said child did make an assault upon [another person] with a knife, an object which when used offensively against a person is likely to result in serious bodily injury, by stabbing said victim[.]

(Doc. 46-1, at 2.) Having determined that Brooks was adjudicated as having violated subdivision (a)(2), the Court must now determine whether the variant of Georgia aggravated assault described in subdivision (a)(2) categorically qualifies as a violent felony under the ACCA.

Aggravated assault under subdivision (a)(2) requires proof that: (1) the defendant committed a simple assault by either (a) attempting to commit a violent injury against another or (b) committing an act that placed another in reasonable apprehension of immediate violent injury; and (2) he or she committed the assault "with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in a serious bodily injury."[6] *See* O.C.G.A. §§ 16-5-20(a), 16-5-21(a)(2) (2012). If Brooks had been convicted, as an adult, of violating O.C.G.A. § 16-5-21(a)(2), the Court would immediately proceed to its analysis of whether this offense categorically "has as an element the use, attempted

---

[5] Though *Shepard* does not address which documents the Court should review in applying the modified categorical approach to juvenile-delinquency adjudications, the Sixth Circuit has looked to juvenile petitions as "charging documents" in applying the modified categorical approach. *See Davis v. United States*, 900 F.3d 733, 737 (6th Cir. 2018).

[6] The Court notes that the second element can be satisfied either by use of a "deadly weapon" or "any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury," such that they are alternate means of satisfying the same element rather than alternate elements defining different offenses. *See* O.C.G.A. § 16-5-21(a)(2); *Patterson v. State*, 789 S.E.2d 175, 176 (Ga. 2016).

use, or threatened use of physical force against another person."[7] 18 U.S.C. § 924(e)(2)(B)(i). However, because acts of juvenile delinquency only qualify as violent felonies if they "involv[e] the use or carrying of a firearm, knife, or destructive device," the Court first considers whether Georgia aggravated-assault under § 16-5-21(a)(2) involves the use or carrying of a firearm, knife, or destructive device.

To make this determination, the Court again applies the categorical approach. *See United States v. Wells*, 473 F.3d 640, 648–49 (6th Cir. 2007) (adopting the categorical approach in this context); *see also id.* at 649 ("[B]y adhering to the principles of *Taylor* and *Shepard*, even in the context of juvenile adjudications, district courts will eliminate the need to examine facts relating to crimes sometimes committed in the far distant past."). Thus, unless the violations of § 16-5-21(a)(2) categorically involve the use or carrying of a firearm, knife, or destructive device, as

---

[7] Although the Court finds that Brooks's aggravated-assault juvenile-delinquency adjudication is not a violent felony on other grounds, the Court notes that the offense may also fall short on the basis that aggravated assault under subdivision (a)(2) does not require the use, attempted use, or threatened use of physical force. The underlying simple assault can be completed by "committing an act which places another in reasonable apprehension of immediately receiving a violent injury," O.C.G.A. § 16-5-20(a)(2), and Georgia law is clear that the perpetrator of a simple assault under § 16-5-20(a)(2) need not intend to place the victim in reasonable apprehension of imminent violent injury. *Patterson*, 789 S.E.2d at 495. Instead, the offender need only intend to commit the act that has such an effect. *Id.* Thus, a conviction for aggravated assault with a deadly weapon or an offensive object—a general-intent crime—only requires the state to prove that (1) the defendant intentionally committed some act (2) with an object that, when used offensively, is likely to result in serious bodily injury (3) that placed the victim in reasonable apprehension of immediate injury. *Id.* Based on this interpretation of the statute, the dissenting justice in *Patterson* expressed concern that this offense could be committed unintentionally—*i.e.*, by changing lanes on a highway while failing to notice another vehicle in one's blind spot, if such encroachment into the other lane would cause another drive reasonable apprehension of an imminent violent injury. *See id.* at 189 (Blackwell, J., dissenting). Though the Court would be bound to apply the Supreme Court's "realistic probability" analysis, this Court, like the dissenter in *Patterson*, takes issue with the position that "courts should trust the good nature, sound judgment, and grace of prosecuting attorneys"—not because the Court "doubt[s] the integrity of prosecuting attorneys generally, but [because] that is not how courts ordinarily construe criminal laws." *Id.* at 189 n.19 (Blackwell, J., dissenting).

14

defined by federal law,[8] Brooks's aggravated-assault juvenile-delinquency adjudication cannot qualify as a violent felony for the purposes of the ACCA. *Id.* at 649.

Applying the categorical approach, it is clear that violations of § 16-5-21(a)(2) do not categorically involve the use or carrying of a firearm, knife, or destructive device. Subdivision (a)(2) of the Georgia aggravated-assault statute can be violated by use of an "object, device, or instrument which, when used offensively against a person, is likely to or actually does result in a serious bodily injury." O.C.G.A. § 16-5-21(a)(2). The offense can be completed without the use of a firearm, knife, or destructive device, and several convictions and delinquency adjudications have been based upon the use of an object that unquestionably does not fall within one of these categories. *See, e.g.*, *Redding v. State*, 844 S.E.2d 725, 728 (Ga. 2020) (fist); *Hatney v. State*, 841 S.E.2d 702, 704 (Ga. 2020) (trash-can lid); *Eberhart v. State*, 835 S.E.2d 192, 197 (Ga. 2019) (taser); *Smith v. State*, 842 S.E.2d 305, 309 (Ga. Ct. App. 2020) (hands and feet); *Miller v. State*, 833 S.E.2d 142, 150 (Ga. Ct. App. 2019) (van); *Interest of I. H.*, 826 S.E.2d 437, 439 (Ga. Ct. App. 2019) (wooden chair); *Gipson*, 772 S.E.2d at 413 (tree limb); *In re T.Y.B.*, 654 S.E.2d 688, 689 (Ga. Ct. App. 2007) (pot of boiling water). Consequently, the Court need not determine whether this variant of aggravated assault would qualify as a violent felony if Brooks had been convicted as an adult, because acts of juvenile delinquency that do not involve the use or

---

[8] 18 U.S.C. § 921(a)(4) defines a "destructive device" as: (A) "any explosive, incendiary, or poison gas– (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses"; (B) a weapon that can or can readily be converted to "expel a projectile by the action of an explosive or other propellant" with a barrel of more than one-half inch in diameter; or (C) "any combination of parts either designed or intended for use in converting any device into any destructive device" described in (A) or (B) "from which a destructive device may be readily assembled."

carrying of a firearm, knife, or destructive device cannot serve as ACCA predicates. *See* 18 U.S.C. § 924(e)(2)(B).

Again, because courts applying the categorical approach—including the modified categorical approach—may not look to the underlying facts of the case to determine whether an offense qualifies as a violent felony and may not use *Shepard* documents for any purpose other than to determine the actual crime underlying the conviction or adjudication, it is wholly irrelevant whether Brooks did, in fact, perpetrate the offense with a firearm, knife, or destructive device. *See Descamps*, 570 U.S. at 278.

> The modified approach does *not* authorize a sentencing court to substitute such a facts-based inquiry for an elements-based one. A court may use the modified approach *only* to determine which alternative element in a divisible statute formed the basis of the defendant's conviction.

*Id.* (emphasis added); *see also Taylor*, 495 U.S. at 601 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting.").

## II. CONCLUSION

Brooks's riot-in-a-penal-institution convictions and his aggravated-assault juvenile-delinquency adjudication categorically do not qualify as violent felonies for the purposes of the ACCA. Accordingly, he is not subject to an ACCA-enhanced sentence for his 18 U.S.C. § 922(g) conviction.

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**